IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX
APPELLATE DIVISION

| | |
|---|---|
| JUAN ROBLES, JR, | ) D.C. Civ. App. No. 2005-0188 |
| | ) |
| Appellant, | ) Super. Ct. Civ. No. D159/2003 |
| vs. | ) |
| | ) |
| | ) |
| LAUREN ROBLES, | ) |
| Appellee. | ) |
| | ) |

On Appeal from the Superior Court of the Virgin Islands
Superior Court Judge: Honorable Patricia D. Steele

Considered: April 16, 2010
Filed: August 1, 2011

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge, District Court of the Virgin Islands; **RAYMOND L. FINCH**, Senior Sitting Judge, District Court of the Virgin Island; and **MICHAEL C. DUNSTON**, Judge of the Superior Court of the Virgin Islands, Division of St. Thomas and St. John, sitting by designation.

Attorneys:

**Gertrude LeCointe, Esq.**
St. Croix, U.S.V.I.
    For the Appellant,

**Beverly Edney, Esq**
St. Croix, U.S.V.I.
    For the Appellee.

**MEMORANDUM OPINION**

This civil appeal arises from an action for divorce and raises two issues: first, whether the trial court erred in its application of the equity of the case doctrine; and second, whether the trial court's calculation of the parties' interests in the marital homestead was made in error.

**I. FACTUAL BACKGROUND**

In 1972, appellant Juan Robles, Jr. ("Appellant") acquired undeveloped property at number 157A Estate Glynn, Christiansted, St. Croix ("property") for a purchase price of $16,000.00. (App. 31.) On February 14, 1984, the Appellant and the Appellee, Lauren Robles ("Appellee") got married. (App. 1.) At the time of their marriage no permanent structure had been erected on the property. However, the Appellant had constructed a cistern and foundation at a cost of $8,000.00. (App. 2, 12, 32.)

In May, 1994, the Appellant executed a quitclaim deed conveying the property to himself and the Appellee as joint tenants. (App. 2, 8, 42.) On June 18, 1985, the Appellee secured a $50,0000.00 loan solely in her name, from the Government Employees Retirement System, in order to pay for

constructing the building that was to serve as the couple's marital abode. (App. 2, 14, 23, 33.) The installment payments on the Apelleee's mortgage loan were extracted directly from her bi-weekly paycheck. (App. 15.)

As the Appellee periodically drew down on the mortgage loan, she gave the Appellant money. The Appellant, in turn, paid for the labor and materials required to build the residential structure. (App. 16, 22, 37.) The Appellee also paid taxes on the property until 1998. (App. 2.) The Appellant concedes that he never gave the Appellee money to pay the mortgage. However, he claims that he contributed labor, material, cabinets, construction oversight and repairs to the building caused by damage from hurricane Hugo. (App. 16, 24, 34-36.)

In April, 1998, the Appellee moved out. (App. 10, 16.) At that time, an enclosed structure had been erected on the property. (App. 24, 25.) However, no electricity, running water, or tiling had been installed. (App. 24.) After the birth of the couple's son, the Appellee never returned to live on the property. (App. 2.)

On November 22, 2004, the parties were granted a divorce. (App. 1.) A final hearing was held on September 26, 2005, to

resolve, *inter alia*, the distribution of the marital homestead. (App. 1.) At the hearing, the parties were represented by counsel, evidence was presented and the parties testified. (App. 5-41.) There, the Appellant explained that after he and his wife had separated, he continued to live on the property[1] while the Appellee continued to make all of the mortgage payments (from 1988 until 2005). (App. 41.)

In its final order, the trial court concluded that the Appellee was entitled to an eighty percent (80%) share in the marital homestead and the Appellant was entitled to a twenty percent (20%) share. (App. 4.) The court premised its ruling on its findings that the Appellee paid the mortgage; the Appellee had produced tax receipts for calendar years 1990, 1992, 1993, 1995 and 1998 for an amount totaling $2,652.79; and the Appellee's total investment in the property equaled $50,000.00 (the amount of loan), while the Appellant invested $24,000 (the $16,000 purchase price, plus $8,000 cost of cistern). The court also noted that the Appellant failed to produce any independent evidence to support his claim for contributions to repairs, materials or property taxes. (App. 2.) The trial court's order

---

[1] At that juncture the property had no electricity or running water.

issued on October 5, 2005. (App. 5.) This timely appeal followed.

## II. JURISDICTION

At the time that this notice of appeal was filed, this court maintained appellate jurisdiction over civil appeals arising from the Superior Court. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005); *Gabriel Joseph v. People of the V.I.*, 2008 U.S. Dist. LEXIS 107654, at *17 (D.V.I. App. Div. Dec. 9, 2008)(this court maintains jurisdiction over all pending civil appeals filed prior to January 29, 2007)).

## III. STANDARD OF REVIEW

We must consider questions of law, jurisdiction or interpretation of statute de novo. *See Jackman v. Estate of Pitterson*, 2008 U.S. Dist. LEXIS 65111 (D.V.I. App. Div. 2008)); *Peter v. Hess Oil V.I. Corp.*, 2009 U.S. Dist. LEXIS 38068 (D.V.I. App. Div. Apr. 28, 2009). However, we afford the more deferential clear error review to factual determinations. *Id.*

## IV. ANALYSIS

It is well-settled that in considering family court proceedings an appellate court may not substitute its factual

findings for those of the trial court, but must accept the ultimate factual determinations of the fact finder unless those findings are shown to be clearly erroneous. *Feddersen v. Feddersen*, 41 V.I. 230, 68 F. Supp. 2d 585 (D.V.I. App. Div. 1999); *C&C/Manhattan v. Gov't of the V.I.*, 2004 U.S. Dist. LEXIS 24543 (D.V.I. 2004); *see also Bloch v. Bloch*, 473 F.2d 1067, 1068-69, 9 V.I. 554 (3d Cir. 1973).

The Appellant does not contend that the property was not the marital homestead subject to the court's equitable distribution.[2] Rather, he complains that the trial court erred in its application of the equity of the case doctrine and in its calculation of each party's investment into the property. For the reasons explained more fully below, we find the Appellant's claims without merit.

---

[2] The trial court's authority to distribute property in a divorce action is limited to two types of marital property: personal property acquired during the marriage and real property utilized as the marital homestead. *Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 393 (D.V.I. App. Div. 2003)(citing *Todman v. Todman*, 571 F.2d 149, 150 (3d Cir. 1978)). The Virgin Islands Code defines a "marital homestead" as "the abode including land and buildings, owned by, and actually occupied by, a person, or by members of his family free of rental charges." Virgin Islands CODE ANN. tit. 33, § 2305(a)(1994).

### A. Equity of the case doctrine

The equity of the case doctrine concerns the fair distribution of marital assets. The following factors form the basis of this equitable inquiry:

> the duration of the marriage, prior marriage of either party, antenuptial agreement of the parties, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of each party in the acquisition, preservation, depreciation, or appreciation in value of the . . . estate, and the contribution of a spouse as a homemaker or to the family unit.

*Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 395 (D.V.I. App. Div. 2003); *see also Charles v. Charles*, 788 F.2d 960, 967 (3d Cir. 1986)(noting that equity may also require consideration of "the extent to which the spouses have brought income and property to the marriage"). "Consideration of each party's contribution to the acquisition of the property necessarily requires the court to delve beyond the form of ownership and title and inquire into the specific facts and circumstances of the parties' marriage and the circumstances under which the property was acquired." *Armstrong*, 266 F. Supp. 2d at 395.

At the hearing below, the court examined the history of the parties' respective contributions of time, money, hardship and labor into the property. That inquiry revealed that the homestead at issue concerned real property acquired by the Appellant in 1972 prior to the marriage, for a purchase price of $16,000. That property remained substantially undeveloped from 1972, until 1984 – when the Appellant married the Appellee. After the parties were married and they held the property as joint tenants, the Appellee took out a $50,000.00 personal mortgage loan to erect a residential structure on the property. During the course of the years that followed, the Appellee, who worked consistently as an elementary school teacher, paid for the labor and materials required to erect an enclosed, substantially complete structure. The Appellant, who was in and out of jobs, provided labor and oversaw the construction of the building. The parties lived in this substantially complete building, without electricity or running water, as husband and wife, until the pregnant Appellee left the abode in 1998.

When the Appellee left and the marriage failed, construction ceased. Nonetheless, seven years after the Appellee moved out of the property, she continued to pay the mortgage. During this period, the Appellant continued

to occupy the premises[3], which remained in substantially the same unfinished condition as when the Appellee had left the home.

Given the record before us, the court undertook a thorough inquiry into the equities of the case. The aforementioned findings supported the trial court's determination that the Appellee was entitled to an 80% share of the property; and we will not substitute the Superior Court's factual determinations for our own.[4] Accordingly, under our governing standard of review, we cannot conclude that the Superior Court erred in its application of the equity of the case doctrine to the facts of this case.

### B. Calculations

The Appellant also urges that the trial court erred in calculating the percentage of each party's investment. The Appellant claims that his financial contributions amounted to approximately 33%, not 20% as the Superior Court found. (Appellant's Brief at 14.)

---

[3] Albeit without electricity or running water. (App. 41.)

[4] An abuse of discretion is a clear or obvious error of judgment that must affect substantial rights, and not simply a different result which can arguably be obtained when applying the law to the facts of the case." *Poleon v. Gov't of the V.I.*, 184 F. Supp. 2d 428, 434 (D.V.I. App. Div. 2002).

At the hearing, the Appellee produced her mortgage payments and tax receipts. However, the Appellant provided absolutely no independent evidence to support his contention that he made contributions to the development and maintenance of the structure that once served as the marital abode. (App. 5-41.) Based on the record before us, we find no clear error in the trial court's calculation of the parties' respective interests.[5] Accordingly, we defer to the Superior Court's rulings concerning this fact-driven determination.

## V.  CONCLUSION

For the reasons cited above we affirm the Superior Court's October 5, 2005 order. An order consistent with this opinion shall follow.

---

[5] Clear error is shown where the trial court's determination is either "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Armstrong*, 266 F.Supp.2d at 397.